**UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION**

| | |
|---|---|
| MEDMARC CASUALTY INSURANCE COMPANY, 4795 Meadow Wood Lane, Suite 335 West, Chantilly, VA 20151,<br><br>Plaintiff,<br><br>v.<br><br>GD GROUP USA COMPANY, d/b/a GD MEDICAL INC., 1286 Humbracht Circle, Bartlett, IL 60103,<br><br>REGISTERED AGENT:<br>Guangyu Zhang<br>GD Group USA Company<br>1286 Humbracht Circle<br>Bartlett, IL 60103,<br><br>and<br><br>ALCON RESEARCH, LLC, 6201 South Freeway, Fort Worth, TX 76134,<br><br>REGISTERED AGENT:<br>Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808<br><br>Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. _____1:22-cv-712_____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Medmarc Casualty Insurance Company ("Medmarc"), by and through its

attorneys, seeks entry of judgment in its favor and against Defendants, GD Group USA

Company, d/b/a GD Medical Inc. ("GD"), and Alcon Research, LLC ("Alcon"), pursuant to 28

U.S.C. § 2201, *et seq.* In support thereof, Medmarc states as follows.

## NATURE OF THE ACTION

1.      GD manufactured disposable surgical gowns and sold them to Alcon for resale to

healthcare providers. Certain of the surgical gowns that GD sold to Alcon were discovered to

1

contain mold, resulting in Alcon filing counterclaims against GD seeking recovery of economic costs related to the allegedly contaminated surgical gowns and the costs of Alcon having to recall products that Alcon had resold to healthcare providers. (See Underlying Counterclaims at ¶¶ 8–10, 15, 21–26, 31–32, 41–43, 51, 58, 68, 79, 90, 98, a true and correct copy of which is attached hereto as "**Exhibit A**.")

2.      GD demanded insurance coverage from Medmarc under a claims-made Products/Completed Operations Liability Policy, No. 21IL380013, effective December 15, 2021 to December 15, 2022 ("Policy"), for Alcon's counterclaims arising from the recall of GD's products. (See Medmarc Policy No. 21IL380013, a true and correct copy of which is attached hereto as "**Exhibit B**," with premium information redacted.)

3.      However, subject to its other terms, definitions, conditions, and exclusions, Medmarc's Policy provides coverage only for "Property Damage" to third-party property, and specifically does not insure damages to GD's own products or the loss of use or recall of GD's own products. (Ex. A at 1, 6–7, 17–19 of 19)

4.      Medmarc now seeks a declaration that it owes no duty to defend or indemnify GD in connection with Alcon's counterclaims arising from the economic costs of returning and recalling the surgical gowns sold by GD to Alcon.

## THE PARTIES

5.      At all times material to this action, Plaintiff Medmarc was and is an insurance company organized and incorporated under the laws of the State of Vermont, with its principal place of business located in Chantilly, Virginia.

6.      At all times material to this action, Defendant GD was and is a corporation organized and incorporated under the laws of the State of Illinois, with its principal place of business located in Bartlett, Illinois.

7.      At all times material to this action, Defendant Alcon was and is a limited liability company organized and incorporated under the laws of the State of Delaware, with its principal place of business located in Fort Worth, Texas. Alcon is named herein solely to the extent it may be deemed a necessary party. Medmarc seeks no separate relief or judgment against Alcon. Rather, Medmarc seeks only to bind Alcon to the outcome of this lawsuit. If Alcon agrees to be so bound, Medmarc will dismiss Alcon from this lawsuit.

## JURISDICTION AND VENUE

8.      The Policy was issued to GD through a Medmarc affiliated insurance broker, who is located in Chantilly, Virginia, where the Policy was assembled and from where the Policy was sent to GD.

9.      On May 10, 2022, GD's counsel notified the broker of the underlying counterclaims that Alcon had filed against GD. On May 11, 2022, the broker tendered the underlying counterclaims to Medmarc, seeking a defense and indemnity for GD under the Policy. (See May 10–11, 2022 correspondence, a true and correct copy of which is attached hereto as "**Exhibit C**.")

10.     On May 17, 2022, GD's counsel advised Medmarc that after "briefly" reviewing the Policy, he believed that the underlying counterclaims "allege covered Property Damage within the definitions in the attached Policy." (See May 17, 2022 correspondence, a true and correct copy of which is attached hereto as "**Exhibit D**.")

11.     On May 24, 2022, Medmarc disclaimed coverage in connection with the underlying counterclaims. (See May 24, 2022 correspondence, a true and correct copy of which is attached hereto as "**Exhibit E**.") Medmarc explained that the Policy does not cover GD's liability for economic losses arising from GD's manufacture and sale of allegedly defective surgical gowns or Alcon's ensuing product recall. In particular, the underlying counterclaims do not allege "Damages because of … Property Damage" to the property of a third party, other than GD's own "Product" or "Work." Medmarc further explained that the Policy's "Damage to Your Product or Your Work," "Loss of Use," and "Recall of Products" exclusions further reinforce that the underlying counterclaims are not even potentially covered.

12.     Based on the parties' present dispute concerning the scope of coverage under the Policy, there is a real, substantial, and justifiable controversy that now exists, which controversy is subject to resolution by this Court, pursuant to 28 U.S.C. §§ 2201 and 2202. Therefore, Medmarc seeks a judicial declaration of the parties' respective rights, duties, and obligations under the Policy.

13.     This Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 2201. There is complete diversity of citizenship because Medmarc and Defendants are citizens of different states. Further, the amount in controversy exceeds $75,000, exclusive of interest, costs, and fees, because the underlying counterclaims for which GD seeks coverage under the Policy allege that GD is liable for damages in excess of $1,000,000.

14.     Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this lawsuit—*i.e.*, Medmarc's underwriting

and issuance of the Policy and decision to deny GD's request for a defense and indemnity in connection with the underlying counterclaims—occurred in this judicial district.

## THE UNDERLYING LITIGATION

15.     On March 18, 2022, GD filed a lawsuit against Alcon and others concerning Alcon's alleged breach of a series of contracts to purchase from GD disposable surgical gowns that were specially manufactured according to Alcon's specifications. That lawsuit is captioned *GD Grp. USA Co. v. Alcon Research, LLC, et al.*, No. 2022-16805, pending in the District Court of Harris County, Texas ("Underlying Lawsuit"). (See Underlying Lawsuit Complaint, a true and correct copy of which is attached hereto as "**Exhibit F**.")

16.     The Underlying Lawsuit alleges that Alcon cancelled all future orders of GD's surgical gowns and refused to pay for those that had already been delivered, based on the allegedly false pretense of quality issues with the surgical gowns. (Ex. F at ¶¶ 20, 23, 25, 31, 33)

17.     The Underlying Lawsuit asserts claims against all defendants for breach or anticipatory breach of contract for the sale of goods under the Texas Business & Commerce Code, and an additional claim against Alcon for tortious interference with contract. (Ex. F at ¶¶ 36–53, 54–58)

18.     In the Underlying Lawsuit, GD seeks to recover more than $6,200,000 in compensatory damages, as well as punitive damages, interest, and attorneys' fees and costs. (Ex. F at ¶¶ 41, 53, 55–59, Prayer for Relief)

19.     On or around April 11, 2022, Alcon filed its answer and affirmative defenses to the Underlying Lawsuit and asserted counterclaims against GD ("Underlying Counterclaims"), which are the subject of this insurance coverage lawsuit. (Ex. A)

20.     Alcon alleges that it supplied surgical equipment to ophthalmologists, including customized sets of surgical equipment known as "Custom Paks." Each Custom Pak contained a sterile surgical gown and multiple other items. Alcon purchased surgical gowns for inclusion in its Custom Paks from third-party vendors, including GD. (Ex. A at ¶¶ 8–11)

21.     In May 2013, Alcon and GD entered into a contract concerning Alcon's purchase of surgical gowns from GD ("Quality Agreement"). Between the fall of 2020 and April 2021, Alcon submitted to GD a series of purchase orders for surgical gowns ("Purchase Orders"). Once Alcon began receiving shipments of GD's surgical gowns, Alcon included GD's surgical gowns in its Custom Paks. GD allegedly knew or had reason to know that Alcon would ultimately be supplying the surgical gowns to surgeons and their medical staff, to be worn while performing surgeries. (Ex. A at ¶¶ 11, 19, 86, 94)

22.     In January 2021, Alcon began receiving customer complaints that the surgical gowns included in the Custom Paks displayed mold. Alcon conducted an investigation that confirmed the presence of mold residue on the surgical gowns, which had been supplied by GD. (Ex. A at ¶¶ 21–23, 26)

23.     Also in January 2021, Alcon notified GD of the customer complaints. GD acknowledged that the surgical gowns it had sold to Alcon contained mold residue. GD informed Alcon that the surgical gowns had been manufactured in China and that the mold was likely attributable to high humidity. GD assured Alcon that the mold issue impacted only limited lots. (Ex. A at ¶¶ 27–30)

24.     On or around February 1, 2021, Alcon notified the United States Food & Drug Administration ("FDA") of the mold issue and began a recall of Custom Paks containing GD's surgical gowns from suspected lots. Alcon also enhanced inspection of GD's surgical gowns that

had not yet been placed into Custom Paks and segregated moldy surgical gowns for destruction. (Ex. A at ¶¶ 31–33)

25.     As Alcon continued to receive customer complaints, Alcon discovered that the mold issue was more widespread than GD had represented. Alcon updated the FDA about new customer complaints, expanded its recall of Custom Paks, and further enhanced inspection efforts to identify and destroy affected surgical gowns that had not yet been placed into Custom Paks. These measures identified additional moldy surgical gowns. (Ex. A at ¶¶ 34–36, 42)

26.     Alcon's continued recall of Custom Paks threatened ophthalmologists' ability to perform eye surgeries. As such, on or around May 4, 2021, Alcon sought FDA approval for a more limited recall. Instead of recalling "potentially affected" Custom Paks, Alcon would send customers standalone replacement surgical gowns ("Field Correction"). (Ex. A at ¶¶ 37–38)

27.     The Field Correction would allow Alcon "to use the supply of already-built but potentially-affected Custom Paks it had on hand." (Ex. A at ¶ 39) The Field Correction would also allow Alcon's customers "to use their currently available Custom Paks with a replacement gown." (Ex. A at ¶ 39)

28.     On or around May 24, 2021, the FDA approved the Field Correction. In implementing the Field Correction, Alcon purchased replacement surgical gowns from vendors other than GD. Some of Alcon's customers refused the Field Correction, leading Alcon to send those customers full replacement Custom Paks. (Ex. A at ¶¶ 41–42)

29.     Based on the foregoing factual allegations, the Underlying Counterclaims allege that GD failed to deliver non-defective, conforming, and/or suitable surgical gowns and that the delivered surgical gowns did not meet Alcon's contractual specifications and were unfit for their intended purpose. (Ex. A at ¶¶ 20, 49, 56, 65, 77, 85)

30.     The Underlying Counterclaims assert six causes of action against GD for breach of contract and breach of express and implied warranties relating to the sale of goods under the Texas Business & Commerce Code:

| | |
|---|---|
| Counterclaim No. 1 | Breach of Contract (Quality Agreement) |
| Counterclaim No. 2 | Breach of Contract (Purchase Orders) |
| Counterclaim No. 3 | Breach of Warranty (Quality Agreement) |
| Counterclaim No. 4 | Breach of Warranty (Purchase Orders) |
| Counterclaim No. 5 | Breach of Implied Warranty of Merchantability |
| Counterclaim No. 6 | Breach of Implied Warranty of Fitness for a Particular Purpose |

(Ex. A at ¶¶ 46–99)

31.     The Underlying Counterclaims seek to recover more than $1,000,000 in damages related to GD's allegedly defective surgical gowns, including: (a) the gowns' purchase price; (b) the gowns' inspection costs; (c) product recall and Field Correction costs; (d) the gowns' replacement costs; (e) loss of production costs; and (f) reputational harm. (Ex. A at ¶¶ 3, 51, 58, 68, 79, 90, 98) The Underlying Counterclaims also seek to recover interest and attorneys' fees and costs. (Ex. A at ¶¶ 52, 59, 69, 80, 100, Prayer for Relief)

## THE POLICY

32.     Medmarc issued to GD a claims-made Products/Completed Operations Liability Policy, No. 21IL380013, effective December 15, 2021 to December 15, 2022. (Ex. B) Subject to its other terms, definitions, conditions, and exclusions, the Policy provides Products/Completed Operations Liability coverage with limits of $2,000,000 per "Occurrence" and in the aggregate,

subject to a deductible of $5,000 per "Occurrence" and $25,000 in the aggregate, which limits are eroded by "Defense Expenses." (Ex. B)

33.     The Policy provides, in relevant part, as follows:

**SECTION I—COVERAGES**

**A.  PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

**a.**     We will pay those sums, in excess of the **Deductible**, that the **Insured** becomes legally obligated to pay as **Damages** because of **Bodily Injury** or **Property Damage** to which this insurance applies. This insurance applies only if:

**(1)**     the **Bodily Injury** or **Property Damage** is included within the **Products/Completed Operations Hazard**;

**(2)**     the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place in the **Coverage Territory**;

**(3)**     the **Bodily Injury** or **Property Damage** did not occur before the **Retroactive Date**, if any, shown in the Declarations or after the end of the policy period, provided that, any **Bodily Injury** or **Property Damage** that commences before the **Retroactive Date** and continues after the **Retroactive Date** will be deemed to have occurred before the **Retroactive Date**;

**(4)**     a **Claim** because of **Bodily Injury** or **Property Damage** is first made against any **Insured** during the policy period or any Extended Reporting Period and is reported to us as soon as reasonably possible; and

**(5)**     the **Claim** did not arise out of a **Serious Adverse Event** that any **Insured** knew about prior to the effective date of this policy, but did not report to us or another

insurer prior to such effective date, or disclose on the Application for this insurance.

     \*     \*     \*     \*

**d.**     **Property Damage** is deemed to occur at the time of physical injury of tangible property or loss of use of tangible property.

     \*     \*     \*     \*

**3. Defense Expenses**

**a.**     We will have the right and duty to defend the **Insured** against any **Claim** for **Bodily Injury** or **Property Damage** to which this insurance applies and to control the defense. For any **Claim** that is not a **Suit**, the duty to defend does not require us to retain counsel.

**b.**     We will pay **Defense Expenses** with respect to any **Claim** that we defend. These payments will contribute to the exhaustion of the **Deductible** and, upon exhaustion, will then reduce the limits of insurance.

     \*     \*     \*     \*

(Ex. B at 1–2 of 19)

    34.     The Policy contains the following relevant exclusions:

**SECTION IV—EXCLUSIONS**

This insurance does not apply to:

     \*     \*     \*     \*

**4. Damage to Your Product or Your Work**

**a.**     **Property Damage** to **Your Product**; or

**b.**     **Property Damage** to **Your Work** except if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

     \*     \*     \*     \*

**11. Loss of Use**

**Property Damage** for, based upon, or arising out of loss of use of tangible property, other than **Your Product** or **Your Work** that:

**a.**     has not been physically injured; or

**b.**     incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous and such property can be restored to use solely by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**.

\*     \*     \*     \*

**15. Recall of Products**

**Damages** claimed for any loss, cost, or expense incurred by any **Insured** for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of **Your Product**, if such product is withdrawn or recalled from the market or from use because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in such product.

This exclusion does not apply to **Damages** arising out of **Bodily Injury** or **Property Damage**.

(Ex. B at 6–7, 9 of 19)

35.     The Policy contains the following relevant definitions:

**SECTION VII—DEFINITIONS**

\*     \*     \*     \*

**4. Claim** means:

**a.**     Written notice received by any **Insured**, from any party, demanding money, services, or other compensation resulting from an **Occurrence** or stating that it is the intention of such party to hold any **Insured** responsible for an **Occurrence**; or

**b.**     a **Suit**.

\*     \*     \*     \*

11

**12. Damages**

    **a.**    Means money:

        **(1)**    awarded in a **Suit**; or

        **(2)**    the payment of which an **Insured** is obligated to make under a binding **Settlement**; ….

          \*      \*      \*      \*

    **d.**    **Damages** does not include:

        **(1)**    fines or penalties imposed by law, regulation, or regulatory authority;

        **(2)**    taxes; or

        **(3)**    the return or restitution of fees, profits or charges for **Your Work** or **Your Product**; or

        **(4)**    fines, penalties or monies demanded by or awarded to a government in an action to recover its costs for health care and treatment.

          \*      \*      \*      \*

**36. Medical Device** means any instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including a component part or accessory, and which is:

    **a.**    recognized in an official national **Formulary** or **Pharmacopoeia**, or any supplement to them;

    **b.**    intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in humans or animals; or

    **c.**    intended to affect the structure of any function of the body of humans or animals, and which does not achieve any of its primary intended purposes through chemical action within or on the body of humans or animals and which is not dependent upon being metabolized for the achievement of any of its primary intended purposes.

          \*      \*      \*      \*

**44. Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*       *       *       *

**49. Property Damage** means:

    **a.**    physical injury to tangible property other than **Your Product** or **Your Work**; or

    **b.**    loss of use of tangible property, other than **Your Product** or **Your Work** that:

        **(1)**    has been physically injured; or

        **(2)**    incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous and such property cannot be restored to use solely by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**.

For the purposes of this insurance, **Electronic Data** is not tangible property.

*       *       *       *

**58. Suit** means a civil proceeding in which **Bodily Injury** or **Property Damage** to which this insurance applies are alleged.

*       *       *       *

**65. Warranty** means an express or implied promise that something in furtherance of a contract is guaranteed by one of the contracting parties.

*       *       *       *

**67. Your Product:**

    **a.**    **Means:**

        **(1)**    Any **Medical Device**, **Drug**, **Biologic**, **In-vitro Diagnostic**, **Cosmetic**, **Soap**, **Nutraceutical**, **Dietary Supplement**, animal, other diagnostic or therapeutic products or processes, or any component thereof, other than real property, and, unless specifically excluded, any other product(s)

13

other than real property designed, developed, manufactured, sold, handled, or distributed by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired;

**(2)** Containers (other than vehicles), materials, technology, parts, or equipment furnished in connection with such goods or products; and

**(3)** Goods, products, or equipment leased, loaned, or held for sale, demonstration, or trial purposes.

**b.** **Includes:**

**(1)** **Warranties** or representations made at any time with respect to the fitness, quality, durability, performance, or use of **Your Product**; and

**(2)** The providing of or failure to provide consultation or educational services, training, advice, warnings, or instructions in the use and care of any products.

**68. Your Work:**

**a.** **Means:**

**(1)** Work or operations performed by you or on your behalf, and includes technology, materials, parts, or equipment furnished in connection with such work or operations, including mobile cadaver training laboratories.

**b.** **Includes:**

**(1)** **Warranties** or representations made at any time with respect to the fitness, quality, durability, performance, or use of **Your Work**; and

**(2)** The providing of or failure to provide consultation or educational services,

14

training, advice, warnings, or instructions in **Your Work**.

**(3)** Attending and observing medical or surgical procedures or **Grand Rounds**.

(Ex. B at 14–19 of 19)

36.   The Policy contains the following Schedule of Retroactive Dates:

With respect to the **Named Insureds** shown in the Schedule below, the **Retroactive Date** shown on the Declarations is replaced by the **Retroactive Date(s)** indicated below for each **Named Insured**:

SCHEDULE

| Named Insured | Retroactive Date | Limit of Insurance |
|---|---|---|
| GD Group USA Company | 12/15/2019 | $1,000,000.00 |
| GD Group USA Company | 04/19/2021 | $2,000,000.00 |

(Ex. B, Schedule of Retroactive Dates Endorsement)

### <u>COUNT I</u>

**(No Duty to Defend Or Indemnify—No "Damages Because Of … Property Damage")**

37.   Medmarc repeats and incorporates by reference the prior paragraphs set forth above, as if set forth fully herein.

38.   Subject to its other terms, definitions, conditions, and exclusions, the Policy covers only amounts that GD becomes legally obligated to pay as "Damages because of … Property Damage." (Ex. B at 1 of 19)

39.   The Policy defines "Property Damage" as:

**a.**   physical injury to tangible property other than **Your Product** or **Your Work**; or

15

> **b.** loss of use of tangible property, other than **Your Product** or **Your Work** that:
>
> > **(1)** has been physically injured; or
> >
> > **(2)** incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous and such property cannot be restored to use solely by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**.

(Ex. B at 17 of 19)

40.     As set forth above, the Policy's insuring agreement requires either physical injury to a third party's tangible property or loss of use of a third party's tangible property that is either physically injured or cannot be restored to use solely by repair or replacement of GD's defective "Product" or "Work."

41.     The Underlying Counterclaims allege damage only to GD's own "Product" or "Work": the defective surgical gowns. GD's allegedly defective surgical gowns do not constitute "Property Damage," as defined by the Policy.

42.     The Underlying Counterclaims do not allege physical injury to the non-surgical gown components of the Custom Paks.

43.     The Underlying Counterclaims do not allege loss of use of the non-surgical gown components of the Custom Paks. Rather, the non-surgical gown components of the Custom Paks remained useable, in that only GD's allegedly defective surgical gowns needed to be removed and replaced.

44.     For these reasons, the Underlying Counterclaims do not allege "Damages because of … Property Damage."

45.     Accordingly, Medmarc seeks a declaration that, pursuant to the Policy's terms, definitions, conditions, and exclusions, Medmarc has no duty to defend or indemnify GD in connection with the Underlying Counterclaims.

## COUNT II

**(No Duty to Defend Or Indemnify—"Damage to Your
Product or Your Work" Exclusion Bars Coverage)**

46.     Medmarc repeats and incorporates by reference the prior paragraphs set forth above, as if set forth fully herein.

47.     The Policy excludes coverage for "Damage to Your Product or Your Work." (Ex. B at 6 of 19) "Your Product" means GD's own product. (Ex. B at 18–19 of 19) "Your Work" means GD's own work. (Ex. B at 19 of 19)

48.     The "Damage to Your Product or Your Work" exclusion reinforces the Policy's definition of "Property Damage."

49.     The Underlying Counterclaims allege damage only to GD's own "Product" or "Work": the defective surgical gowns. GD's allegedly defective surgical gowns do not constitute "Property Damage," as defined by the Policy.

50.     The Policy's "Damage to Your Product or Your Work" exclusion applies to preclude any possibility of coverage for the Underlying Counterclaims.

51.     Accordingly, Medmarc seeks a declaration that, pursuant to the Policy's terms, definitions, conditions, and exclusions, Medmarc has no duty to defend or indemnify GD in connection with the Underlying Counterclaims.

## COUNT III

**(No Duty to Defend Or Indemnify—
"Loss of Use" Exclusion Bars Coverage)**

52.     Medmarc repeats and incorporates by reference the prior paragraphs set forth above, as if set forth fully herein.

53.     The Policy's "Loss of Use" exclusion bars coverage for:

> **Property Damage** for, based upon, or arising out of loss of use of tangible property, other than **Your Product** or **Your Work** that:
>
> **a.**     has not been physically injured; or
>
> **b.**     incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous and such property can be restored to use solely by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**.

(Ex. B at 7 of 19)

54.     The "Loss of Use" exclusion reinforces the Policy's definition of "Property Damage."

55.     The Underlying Counterclaims allege damage only to GD's own "Product" or "Work": the defective surgical gowns. GD's allegedly defective surgical gowns do not constitute "Property Damage," as defined by the Policy.

56.     The Underlying Counterclaims do not allege physical injury to the non-surgical gown components of the Custom Paks.

57.     The Underlying Counterclaims do not allege loss of use of the non-surgical gown components of the Custom Paks.

58.     For these reasons, the Policy's "Loss of Use" exclusion applies to preclude any possibility of coverage for the Underlying Counterclaims.

59.     Accordingly, Medmarc seeks a declaration that, pursuant to the Policy's terms, definitions, conditions, and exclusions, Medmarc has no duty to defend or indemnify GD in connection with the Underlying Counterclaims.

## COUNT IV

**(Additional Grounds Precluding Coverage, In Whole Or In Part)**

60.     Medmarc repeats and incorporates by reference the prior paragraphs set forth above, as if set forth fully herein.

61.     To the extent the Underlying Counterclaims allege "Damages because of … Property Damage," and neither the "Damage to Your Product or Your Work" exclusion nor the "Loss of Use" exclusion applies to preclude coverage, additional defenses apply or may apply to preclude coverage, in whole or in part. Such defenses include, but are not limited to, the following:

(a)     The Policy covers "Property Damage" that did not occur before the "Retroactive Date" or after the Policy period. (Ex. B at 1 of 19) "Property Damage" is deemed to occur at the time of physical injury to or loss of use of tangible property. (Ex. B at 1 of 19) The Schedule of Retroactive Dates provides that for "Claims" involving "Property Damage" that began on or after December 15, 2019, but before April 19, 2021, the limits are $1,000,000 per "Occurrence." (Ex. B, Schedule of Retroactive Dates Endorsement) The Underlying Counterclaims allege that Alcon began recalling Custom Paks on or around February 1, 2021. (Ex. A at ¶ 31) To the extent this constitutes "Property Damage," any such "Property Damage" occurred on or around February 1, 2021. Therefore, the Policy limits are $1,000,000.

(b)     The Policy defines "Damages" to exclude "return or restitution of fees, profits or charges for Your Work or Your Product." (Ex. B at 14–15 of 19) The Underlying Counterclaims seek to recover the purchase price of GD's

allegedly defective surgical gowns. (Ex. A at ¶¶ 51, 58, 68, 79, 90, 98) The surgical gowns' purchase price does not qualify as "Damages" within the meaning of the Policy and is not covered.

(c)     The Policy's "Recall of Products" exclusion bars coverage for "Damages claimed for any loss, cost, or expense incurred by any Insured for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of Your Product, if such product is withdrawn or recalled from the market or from use because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in such product." (Ex. B at 9 of 19) The Underlying Counterclaims seek to recover product recall and Field Correction costs. (Ex. A at ¶¶ 51, 58, 68, 79, 90, 98) Coverage for such costs is precluded by the "Recall of Products" exclusion.

62.     Medmarc reserves its right to raise additional defenses that apply or may apply to preclude coverage in connection with the Underlying Counterclaims, in whole or in part.

## **REQUEST FOR RELIEF**

WHEREFORE, Medmarc respectfully requests that this Court enter judgment for Medmarc as follows:

(1)     Declaring that, under the Policy, Medmarc has no duty to defend or indemnify GD in connection with the Underlying Counterclaims or to reimburse GD for any costs incurred in the defense of the Underlying Counterclaims;

(2)     Otherwise declaring the parties' rights, duties, and obligations with respect to the Policy and Underlying Counterclaims; and

(3)      Granting such other and further relief as the Court deems just.

DATED: June 23, 2022                                 Respectfully submitted,

/s/ *Kelly M. Lippincott*
Kelly M. Lippincott
Virginia Bar No. 66648
klippincott@grsm.com
GORDON & REES LLP
1101 King Street, Suite 520
Alexandria, VA 22314
703.650.7015 (telephone)
202.800.2999 (facsimile)

Adam H. Fleischer
(application for *pro hac vice* admission
pending)
afleischer@batescarey.com
Agelo L. Reppas
(application for *pro hac vice* admission
pending)
areppas@batescarey.com
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
312.762.3100 (telephone)
312.762.3200 (facsimile)

*Attorneys for Plaintiff, Medmarc*
*Casualty Insurance Company*