IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MEDMARC CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 1:22-cv-712 (RDA/WEF) |
| GD GROUP USA COMPANY, *et al.*, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant GD Group USA Company's ("Defendant GD" or "GD") Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 32) and Defendant Alcon Research, LLC's ("Defendant Alcon" or "Alcon") Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, Motion to Transfer for Improper Venue (Dkt. 38). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motions together with Defendant GD's Memorandum in Support (Dkt. 33), Plaintiff Medmarc Casualty Insurance Company's ("Plaintiff" or "Medmarc") Amended Opposition (Dkt. 43), Defendant GD's Reply (Dkt. 44), Plaintiff's and Defendant GD's Supplemental Briefs (Dkt. Nos. 57; 58), Defendant Alcon's Memorandum in Support (Dkt. 39), Plaintiff's Opposition (Dkt. 47), and Defendant Alcon's Reply (Dkt. 53), the Court GRANTS Defendant GD's Motion and GRANTS Defendant Alcon's Motion for the reasons that follow.

I. BACKGROUND

Medmarc is an insurance company incorporated under the laws of the state of Vermont with its principal place of business located in Chantilly, Virginia. Dkt. 25-1 ¶ 5. GD is a distributor

of disposable surgical gowns. *Id.* ¶ 6. GD is incorporated under the laws of the state of Illinois and its principal place of business is located in Bartlett, Illinois. *Id.* Alcon is a major provider of surgical equipment used by ophthalmologists (eye surgeons) throughout North America. *Id.*, Group Ex. A ¶ 8. Alcon is incorporated under the laws of the state of Delaware, with its principal place of business located in Fort Worth, Texas. *Id.* ¶ 7. In the instant action, Medmarc seeks a declaratory judgment from this Court that it owes no duty to defend or indemnify GD against counterclaims made by GD's co-defendant here, Alcon, in an underlying lawsuit (the "Underlying Litigation") GD filed against Alcon in Texas state court. *Id.* ¶ 4.

### A. The Underlying Litigation

On March 18, 2022, GD filed a lawsuit in Harris County, Texas against Alcon, alleging that Alcon breached a series of contracts to purchase from GD disposable surgical gowns that were specially manufactured according to Alcon's specifications. *Id.* ¶ 18. In that lawsuit, GD asserted that Alcon cancelled all future orders of GD's surgical gowns and refused to pay for those that had already been delivered, based on the allegedly false pretense of quality issues with the surgical gowns. *Id.* ¶ 19. Alcon responded to GD's claims and brought counterclaims against GD on April 11, 2022. Subsequently, on September 27, 2022, Alcon filed amended counterclaims against GD, which are the subject of the instant insurance coverage lawsuit. *Id.* ¶ 22. In its amended counterclaims, Alcon alleges that GD failed to deliver non-defective, conforming, and/or suitable surgical gowns, that the delivered surgical gowns did not meet Alcon's contractual specifications, and that the surgical gowns were unfit for their intended purposes. *Id.* ¶ 33. GD then demanded insurance coverage from Medmarc under a "claims-made Products/Completed Operations Liability Policy" (the "Insurance Policy") for the underlying counterclaims arising from GD's allegedly defective products. *Id.* ¶ 2.

B. The Instant Action

On June 23, 2022, Medmarc filed the instant lawsuit for a declaratory judgment in this Court, arguing that the Insurance Policy provides coverage only for property damage to tangible third-party property and does not insure damages to GD's own products and work. Dkt. 1. Medmarc then sought leave to amend its initial Complaint on November 9, 2022, Dkt. 24, which the Court granted on November 14, 2022, Dkt. 29.

On November 29, 2022, GD filed a Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. 32, along with a Memorandum of Support thereof, Dkt. 33. On December 13, 2022, Medmarc filed its Opposition to GD's Motion, Dkt. 42, which it later amended on December 14, 2022, Dkt. 43. GD then filed a Reply in support of its Motion on December 19, 2022. Dkt. 44. The Court subsequently ordered that Medmarc and GD file supplemental briefing on GD's Motion, Dkt. 56, which the parties submitted to the Court on February 8, 2023, Dkt. Nos. 57; 58.

On December 7, 2022, Alcon filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, to Transfer for Improper Venue. Dkt. 38. On December 21, 2022, Medmarc filed its Opposition to Alcon's Motion, Dkt. 47, and on January 5, 2023, Alcon filed a Reply in support of its Motion, Dkt. 53.

## II. STANDARD OF REVIEW

A. Rule 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When resolving a Rule 12(b)(2) motion, a court undertakes a two-step analysis. First, a court looks to whether personal jurisdiction is authorized by state law. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). Second, a court determines whether the exercise of personal jurisdiction comports with the constitutional requirements of due

process. *Id.* Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fourteenth Amendment. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Accordingly, "the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

When determining whether there is personal jurisdiction over a case, a district court "must accept as true the uncontroverted factual allegations in the plaintiff's complaint." *Mattiaccio v. Cantu Apiaries of Fla., LLC*, No. 1:21-CV-00421, 2022 WL 1597826, at *3 (E.D. Va. May 19, 2022) (quoting *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013)). When a court does not conduct an evidentiary hearing on personal jurisdiction, a case may be dismissed for lack of personal jurisdiction if the plaintiff has failed to make a *prima facie* showing. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). If a *prima facie* showing is made, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction [so] unreasonable," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985), as to "offend traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In evaluating the parties' requisite burdens, a court may rely on "motion papers, supporting legal memoranda, [] the allegations in the complaint," *Consulting Eng'rs*, 561 F.3d at 276, and "the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts," 5B Alan Wright & Arthur Miller, Fed. P. & Proc. § 1351, at 305 (3d ed. 2004). *See also In re Polyester Staple Antitrust Litig.*, No. MDL 3:3-CV-1516, 2008 WL 906331, at *7 (W.D.N.C. Apr. 1, 2008) (explaining that, in determining whether a plaintiff has made a *prima facie* showing, "the court 'may receive and weigh affidavits

and any other relevant matter to assist it in determining the jurisdictional facts'" (quoting *Reese Bros. v. U.S. Postal Serv.*, 477 F. Supp. 2d 31, 36-37 (D.D.C. 2007))).

### B. Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). A district court must dismiss an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). The plaintiff, as the party asserting jurisdiction, bears the ultimate burden of proving such jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based[,] . . . all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* But in the event of a factual dispute over the jurisdictional allegations in the complaint, the court may consider evidence outside the complaint "without converting the proceeding to one for summary judgment." *Id.*

### C. Rule 12(b)(3) Standard

Under Federal Rule of Civil Procedure 12(b)(3), a claim may be dismissed for improper venue. When determining whether venue is proper, the Court is not bound by the allegations in the complaint and may consider evidence outside the pleadings. *See Shallow v. F.B.I.*, No. 1:19-cv-229, 2019 WL 2718493, at *1 (E.D. Va. June 27, 2019) (citing *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). The burden of proving proper venue lies with the party bringing the action. *Id.*

III. ANALYSIS

GD moves the Court to dismiss the instant action against it for lack of personal jurisdiction. Dkt. 32. Alcon requests that, if the Court grants GD's Motion, the Court also dismiss the instant case as to Alcon because there would no longer be any justiciable claims against it. Dkt. 38. In the alternative, Alcon asks that, if the Court denies GD's Motion, the Court transfer the instant action to the U.S. District Court for the Southern District of Texas. *Id.* The Court addresses each Motion in turn.

A. Defendant GD's Motion to Dismiss for Lack of Personal Jurisdiction

The Court first considers whether Medmarc has made a *prima facie* showing of personal jurisdiction over GD. Courts have categorized personal jurisdiction in two ways: specific and general. A court may exercise general jurisdiction over a non-resident defendant for non-forum related activities when that defendant's "continuous corporate operations" in the state are "so substantial" and so "'continuous and systemic' as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Int'l Shoe*, 326 U.S. at 318; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Therefore, just as general jurisdiction for individuals is generally limited to those states where the individual is domiciled, general jurisdiction over corporations is limited to "an equivalent place," such as the corporation's place of incorporation or principle place of business. *Id.* at 136 (quoting *Goodyear*, 564 U.S. at 919).

Meanwhile, specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant where the litigation arises out of or relates to the nonresident defendant's contacts with the forum. *Heathmount A.E. Corp. v. Technodome.com*, 106 F. Supp. 2d 860, 865 (E.D. Va. 2000). To satisfy due process in the exercise of specific jurisdiction, a court must find

6

"that the defendant purposefully directed his activities at residents of the forum thereby availing himself of the privilege of conducting activities therein and invoking the benefits and protections of the forum's laws." *Id.* (citing *Burger King Corp.*, 471 U.S. at 472). "As a corollary to this 'purposeful availment' requirement, courts" also "consider whether the . . . nonresident defendant could reasonably have" foreseen "being haled into court in the forum state." *Id.* (citing *Burger King Corp.*, 471 U.S. at 474).

Medmarc argues that this Court's exercise of either general jurisdiction or specific jurisdiction over GD would comport with the due process principles of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (1945). The Court considers each category of personal jurisdiction in turn.

### 1. General Jurisdiction

Medmarc first asserts that this Court's exercise of general jurisdiction over GD would be appropriate because GD operates one of its three domestic distribution centers in Richmond, Virginia and sought out a Virginia-based broker to assist it in procuring the Insurance Policy from a Medmarc unit based in Virginia. Dkt. 43 at 8-10. In response, GD counters that, under *Daimler*, it is not subject to general jurisdiction in Virginia given that it does not own or operate any business incorporated in Virginia or maintain a principle place of business in Virginia. Dkt. 33 at 5-6.

This Court agrees with GD. As the Supreme Court explained in *Daimler*, "only a limited set of affiliations with a forum"—the quintessential examples being the place of incorporation and the principal place of business—"will render a defendant amenable to all-purpose jurisdiction there." 571 U.S. at 137. In the instant case, Medmarc does not contest that GD is incorporated in the state of Illinois and has its principal place of business in Bartlett, Illinois. *See* Dkt. 25-1 ¶ 6. Thus, "the 'paradigm bases' for establishing general jurisdiction are absent, and general

jurisdiction exists only if this is 'an exceptional case [in which GD's] operations in [Virginia are] so substantial and of such a nature as to render [GD] at home in [Virginia].'" *PBM Cap. Invs., LLC v. Gen. Elec. Co.*, No. 3:15-cv-00037, 2016 WL 3982590, at *4 (W.D. Va. July 22, 2016) (quoting *Daimler*, 571 U.S. at 761 n.19); *see also Turner v. Syfan Logistics, Inc.*, No. 5:15CV81, 2016 WL 1559176, at *3 (W.D. Va. Apr. 18, 2016) ("After *Daimler*, 'it is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.'" (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014))).

Notably, the *Daimler* Court found general jurisdiction improper even though the defendant there had "multiple California-based facilities" and was the "largest supplier of luxury vehicles to the California market." 571 U.S. at 123. Here, GD's alleged contacts with Virginia—namely, having one distribution center in Virginia and communicating with a Virginia broker to procure a policy from a Virginia resident—are far less significant than those of the defendant in *Daimler*. Accordingly, the facts at hand are insufficient "as to render [GD] essentially at home in [Virginia]," *Goodyear*, 564 U.S. at 919 (2011), and exercising general jurisdiction over GD would thus be improper.

## 2. Specific Jurisdiction

The Court next turns to the issue of specific jurisdiction. Medmarc argues that the following three facts support a finding of specific jurisdiction over GD: (1) GD operates one of its three domestic distribution centers in Richmond, Virginia; (2) GD obtained the Insurance Policy from a Medmarc unit in Virginia through a Virginia-based broker; and (3) some of the allegedly defective surgical gowns that gave rise to the Underlying Litigation ended up in the hands of at least six Virginia healthcare providers. Dkt. 43 at 11-12.

Beginning with the first alleged basis for specific jurisdiction, GD maintains that it does not have and has never had a distribution center in Virginia. Dkt. 33 at 2, Ex. 1 at ¶ 3 (Declaration of GD's operations manager, Jingjing "Angela" Zhang). According to GD, Medmarc must have confused it with other companies having a similar name. *Id.* at 2-4. GD claims that "GD Medical" is a commonly used name, for which entities other than the GD sued here—including GD's own supplier—have asserted trademarks. Dkt. 44 at 2.

Medmarc counters that GD's operations manager, Ms. Zhang, explicitly represented to Medmarc in GD's application for the policy at issue that GD operated a distribution center in Richmond, Virginia by providing a link to a website stating precisely that. Dkt. 43 at 1. Medmarc explains that, on November 8, 2021, Ms. Zhang, as an authorized representative of GD, signed a renewal application for submission to Medmarc as part of the renewal of the Insurance Policy, and the renewal application listed GD's website as www.gdmed.com. *Id.* at 5, Ex. 4. That website, in turn, advertises GD as a leading manufacturer of medical devices "with U.S. distribution centers in Bartlett, Illinois, Richmond, Virginia, and City of Industry, California." *Id.* at 6, Ex. 5. Medmarc further notes that Ms. Zhang's own signature block on the renewal application provided an email address at the domain "gdmed.com," thus affirming that the website belongs to GD. Dkt. Nos. 43 at 5; 57 at 2.

GD first contends that the website listed in the renewal application belongs to its supplier. Dkt. 44 at 1-4. GD directs the Court's attention to the copyright notice on the bottom of the website, which indicates that the website owner claimed in 2011 to be the owner of a registered trademark, and used the symbol—a red cross, sandwiched between a stylized blue "G" and "D"— appearing in the upper left-hand corner. *Id.* at 2 (citing Dkt. 43, Ex. 5). GD explains that the USPTO records website shows that the applicant for that trademark was "Jiangsu Guangda

9

Medical Material Co., Ltd. DBA GD Medical CORPORATION CHINA 18 Baochang Rd North Haian, Jiangsu CHINA," and that the trademark applicant filed its application on July 7, 2009, before GD was even formed. *Id.*, Ex. A; *see also* Dkt. 33, Ex. 6 (Corporation File Detail Report for GD on the Illinois Secretary of State's website) (showing that GD was incorporated in 2010). According to GD, Jiangsu Guangda is a China-based manufacturer of medical supplies for which GD is a distributor, and thus, a separate entity from GD itself. Dkt. 44 at 2.

GD next asserts that Medmarc—not GD—was the party that initially introduced the website into the insurance application process. Dkt. 44 at 1, 4. GD explains that, in December 2019, when GD was first applying for insurance coverage from Medmarc, GD received an email from George Ayd, Medmarc's Assistant Vice President of Marketing and Business Development. *Id.* at 4. Mr. Ayd wrote: "Here is the application for you to look over and complete. Specifically, could you answer questions 14, 29 through 46 . . . . Then if you could estimate the questions to the chart below question 28 on page 2 of 7. (Basically, looking mostly for the supplier)." *Id.*, Ex. E. Mr. Ayd attached a partly pre-completed application to that email with the www.gdmed.com website *already filled in* at question 13. *Id.*, Ex. G. GD thus claims that it was a Medmarc employee who apparently misidentified the website as belonging to GD, and then GD merely followed Medmarc's instructions for filling out the renewal application. *Id.* at 5. GD further notes that the domain of Ms. Zhang's email matches the website URL simply because both companies use the GD Medical trade name to market Jiangsu Guangda's goods. Dkt. 58 at 6.

Having reviewed the parties' competing exhibits and affidavits, the Court is skeptical that GD itself, rather than its supplier, has a distribution facility in Virginia. Nonetheless, at this stage of the proceedings, the Court must "resolve any factual conflicts in [P]laintiffs' favor." *Krausz Indus. Ltd. v. Smith-Blair, Inc.*, 188 F. Supp. 3d 545, 551 (E.D.N.C. 2016) (quoting *Grober v.*

10

*Mako Products, Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012)). But even assuming *arguendo* that GD does operate a distribution center in Virginia, Medmarc has failed to make the critical showing that GD's contact with this forum state is related to the instant Insurance Policy dispute. Indeed, a sister court within the Fourth Circuit has already held that the distribution of a defendant's products in Virginia does not give rise to specific jurisdiction over that defendant in a suit concerning the interpretation of an insurance policy. *See Northland Ins. Co. v. Berkebile Oil Co.*, No. 3:3-cv-11, 2003 WL 22995127, at *5 (W.D. Va. Dec. 12, 2003) ("The instant declaratory judgment action does not arise from the sale of products manufactured by Hydrosol . . . . [W]hile the distribution of Hydrosol's products might have subjected the company to suit in Virginia for a product liability action, those same contacts would not permit this court to hale Hydrosol into Virginia to adjudicate a contract dispute."); *see also Chiaphua Components Ltd. v. West Bend Co.*, 95 F. Supp. 2d 505, 510 (E.D. Va. 2000) (holding that declaratory judgment action against Wisconsin manufacturer to declare components incorporated into final product were not defective was independent of sales of the product in Virginia); *Coastal Video Commc'ns Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562, 568 (E.D. Va. 1999) (concluding that sale of copyrighted material did not support specific jurisdiction in plaintiff's declaratory judgment action to determine whether publication infringed the plaintiff's copyright). Accordingly, the Court finds that GD's purported operation of a distribution center in Virginia is insufficient to give rise to specific jurisdiction in this forum state.

The Court next considers whether GD's act of reaching out to a broker in Virginia to procure the Insurance Policy from a Virginia-based Medmarc unit is a viable basis for exercising specific jurisdiction over GD. Medmarc's Amended Complaint alleges that the Insurance Policy "was issued to GD through a Medmarc affiliated insurance broker, who is located in Chantilly,

Virginia, where the Policy was assembled and from where the Policy was sent to GD." Dkt. 25-1 ¶ 8. GD asserts that Medmarc's focus on where Medmarc and its affiliated broker are located, as well as where it performed some administrative tasks related to the contract, are misplaced. Dkt. 44 at 9-10.

This Court finds GD's argument persuasive. In *Walden v. Fiore*, the Supreme Court made clear that the mere presence and activities of a plaintiff in the forum state cannot create personal jurisdiction over the defendant. 571 U.S. 277, 283 (2014) ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). And lower federal courts have consistently held that the mere creation of a contract with a Virginia resident is insufficient to pass Due Process muster, especially where the contract itself does not require performance in the forum state. *See, e.g.*, *Initiatives Inc. v. Korea Trading Corp.*, 991 F. Supp. 476, 480-81 (E.D. Va. 1997) (finding that the existence of several contracts between the Virginia plaintiff and the foreign defendant were insufficient to establish jurisdiction over the defendant in Virginia, even where the contracts contained Virginia choice of law provisions, where the contracts did not indicate that performance was to occur in Virginia); *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 200 (4th Cir. 2018) (favorably citing *Moncrief Oil International, Inc. v. OAO Gazprom*, 481 F.3d 309, 312-13 (5th Cir. 2007), "where the Fifth Circuit found that a decision to contract with a resident of the forum state did not establish personal jurisdiction, even though the resident foreseeably performed many of its duties there, in part because the contract was centered outside the forum and did not require performance in the forum by the defendant"). Here, the Insurance Policy itself did not require performance from either party in Virginia. Rather, Medmarc's performance under the policy would most likely involve providing

a defense against claims by third parties, and in the instant case, the defense would be provided in Texas, not Virginia.

To be sure, the Court recognizes that GD did, in a sense, reach into the forum state by communicating with a Medmarc-affiliated broker via email about procuring insurance coverage and later on by notifying the broker of the original underlying counterclaims. Dkt. Nos. 25-1 ¶ 9; 43 at 4, Ex. 6 ¶¶ 2, 12 (Complaint, *GD Group USA Co. v. George Ayd, et al.*, Case No. 2022 LA 001063 (DuPage County, Illinois)). However, these communications were, at most, fortuitous contacts with Virginia, dictated by where the broker happened to be located rather than a purposeful availment by GD of the benefits of doing business in Virginia.

Indeed, the Fourth Circuit has instructed that such limited communications involving a state are typically insufficient to confer specific jurisdiction, in the absence of the defendant "repeatedly" having "intense" contacts with the forum state such as frequent emails and multiple in-person business visits. *Sneha Media & Ent.,* 911 F.3d at 200; *see also Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 562 (4th Cir. 2014) (holding that the district court erred in finding no personal jurisdiction where the parties exchanged frequent e-mail correspondence and conducted at least six business meetings that involved "continued solicitations" in the forum state); *Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 305-06 (4th Cir. 2012) (finding that a defendant corporation had sufficient contacts to the forum where it had conducted "substantive deliberations" by email with a co-conspirator working in the forum state to jointly conduct a "critical part" of the scheme that gave rise to the plaintiff's claims); *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009) (concluding that a defendant engaging in 13 years of collaboration and correspondence with a plaintiff in Virginia constituted purposeful availment of the privilege of conducting business in the forum state).

Consequently, exercising specific jurisdiction over GD based on its limited communications with the Virginia-based broker and its approximately three-and-a-half-year relationship with Medmarc would not be proper.[1]

Finally, the Court addresses whether GD's presumed understanding that its products would end up in Virginia, given Alcon's nationwide distribution, is sufficient for the Court to exercise specific jurisdiction over GD. The Court concludes that it is not. As GD correctly points out, the Supreme Court has held that the mere placement of a product into the stream of commerce, by itself, is not the kind of act that can give rise to specific jurisdiction. *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987) ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."). And even assuming for the sake of argument that such conduct could give rise to personal jurisdiction for claims related to the quality of the gowns, that still would not give rise to jurisdiction for a declaratory judgment suit to determine insurance coverage for such quality problems. *See Northland Ins. Co.*, 2003 WL 22995127, at *5 ("The instant declaratory judgment action does not arise from the sale of products manufactured by Hydrosol . . . . [W]hile the distribution of Hydrosol's products might have subjected the company to suit in Virginia for a product liability action, those same contacts would not permit this court to hale Hydrosol into Virginia to adjudicate a contract dispute."). Ultimately, the Court concludes that the jurisdictional

---

[1] Here, there is evidence of a relationship between GD and Medmarc since around December 2019, when GD initially applied for insurance coverage from Medmarc. Dkt. 44 at 4. And since then, GD appears to have renewed the Insurance Policy only twice—once in 2020 and again in 2021. Dkt. 58 at 4.

14

facts cited by Medmarc—taken either separately or in tandem—do not render the exercise of specific jurisdiction over GD appropriate here.

B. Defendant Alcon's Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, to Transfer for Improper Venue

In its Motion, Alcon argues that, if the Court grants GD's Motion, there would no longer be a justiciable claim against Alcon given that Medmarc admits that it has named Alcon as a defendant solely because Alcon is interested in the outcome of the dispute between Medmarc and GD. Dkt. 39 at 1-2. In its Opposition to Alcon's Motion, Medmarc does not contest that dismissal of the instant case as to GD would render Medmarc's claims against Alcon moot. Dkt. 47.

Federal courts' power to adjudicate disputes extends only to "cases" and "controversies." U.S. Const. art. III, § 2. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). The doctrine of mootness, a subset of this Article III requirement, serves to "ensure[] that the dispute is sufficiently concrete throughout all stages of the proceeding." *J.E.C.M. v. Lloyd*, 352 F. Supp. 3d 559, 576 (E.D. Va. 2018).

In the instant case, Medmarc's Amended Complaint alleges that "Alcon is named herein solely to the extent it may be deemed a necessary party. Medmarc seeks no separate relief or judgment against Alcon. Rather, Medmarc seeks only to bind Alcon to the outcome of this lawsuit." Dkt. 25-1 at ¶ 7. Because this Court dismisses the instant action as to GD, there is no longer an active dispute between Medmarc and Alcon in this District. Accordingly, Medmarc's claims against Alcon are dismissed as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendant GD's Motion (Dkt. 32) is GRANTED and Defendant Alcon's Motion (Dkt. 38) is GRANTED; Plaintiff's Amended Complaint is DISMISSED WITHOUT PREJUDICE.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
April 18, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge